Argued October 11, reversed and remanded December 12, 1922.

## COGHLAN *v*. MILLER.

(211 Pac. 163.)

**Malicious Prosecution—Discharge Held Termination of Prosecution and Evidence of Want of Probable Cause.**

1. For the purposes of an action for malicious prosecution, an order by a justice of the peace adjudging that there was no probable cause to believe plaintiff guilty of the crime charged, or of any crime, and ordering his discharge, constitutes a termination of the prosecution and *prima facie* evidence of want of probable cause.

**Malicious Prosecution — Complaint Held to Charge Assault With "Dangerous Weapon."**

2. For the purposes of an action for malicious prosecution, a complaint charging plaintiff with assault on defendant "with a Win-

---

1. Discharge by magistrate as evidence of want of probable cause for malicious prosecution, see notes in 3 Ann. Cas. 112; 7 Ann. Cas. 859.

chester rifle * * loaded with powder and bullets," and that plaintiff, "being then and there armed with said Winchester rifle and being within range and shooting distance" of defendant, etc., sufficiently charged the crime of assault with a dangerous weapon, as defined by Section 1923, Or. L.; a loaded Winchester rifle used within striking distance, either as a club or a firearm, being a dangerous weapon as a matter of law.

**Forcible Entry and Detainer—Actual Taking Possession Necessary to Constitute Entry.**

3.  There must be an actual taking possession of lands or tenements by entering into or setting foot thereon, to constitute a forcible entry.

**Forcible Entry and Detainer—One Out of Actual Possession Criminally Liable for Re-entry by Force.**

4.  One out of actual possession of real property, though lawfully entitled to possession, is liable criminally if he accomplishes a entry by force against the person of an actual occupant who opposes and resists such entry (Section 2533, Or. L.).

**Licenses—Lessees' Right to Use Lane for Ingress and Egress License Coupled With Interest.**

5.  The lessees' right to use a lane for ingress or egress from the premises is an incident to the lease and constitutes a license coupled with an interest not revocable while the lease was in force, but does not clothe them or their associates with any right of possession of, or property in, the lane.

**Assault and Battery—Forcible Entry by Associates of Lessee Held an Assault and Battery on Lessor.**

6.  Where persons assisting lessees to harvest their crop forcibly opened a gate and, acting together, entered a lane, the use of which was granted lessees by the lease for ingress to and egress from the leased land, and one of them laid hands in a hostile manner on lessor, who, on lessees' default in payment of the amount of rent due had entered the land and closed and fastened the gate, without re-entering or declaring his intention to re-enter the leased land, their entry was wrongful, and both were guilty of assault and battery, though lessor violated a criminal statute (Section 1925, Or. L.), in pointing a loaded rifle at them, and his refusal to allow them to pass was a breach of his contract with lessees, there being nothing in the circumstances of such hostile demonstrations necessitating offensive action as a measure of defense, and no property rights to protect.

**Malicious Prosecution—Probable Cause for Charging Assault With Dangerous Weapon not Established by Technical Assault.**

7.  Probable cause for the institution of a prosecution for assault with a dangerous weapon, is not necessarily established by evidence of a technical assault and battery.

---

4.  Threats and display of force without actual force as constituting forcible entry, see note in 15 **Ann. Cas.** 804.

Malicious Prosecution—Probable Cause Held for Jury.

8. In an action for malicious prosecution of a charge of assault with a dangerous weapon, the question of probable cause *held* for the jury.

Appeal and Error—Instruction Giving Erroneous Rule of Law Prejudicial, in View of Theory on Which Case was Tried.

9. An instruction in action for malicious prosecution giving an erroneous rule of law as to right of one out of possession to enter by force, though not apparently prejudicial is ground for reversal, where the case seems to have been tried on a theory which prevented verdict on the merits.

From Marion: PERCY R. KELLY, Judge.

Department 2.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Walter C. Winslow, Mr. Roy F. Shields* and *Mr. H. Overton*, with oral arguments by *Mr. Winslow* and *Mr. Shields*.

For respondent there was a brief over the name of *Messrs. Carson & Brown*, with oral arguments by *Mr. John H. Carson* and *Mr. Allan Carson*.

McCOURT, J.—This is an action for damages for malicious prosecution. Plaintiff recovered judgment and defendant appeals.

Defendant instituted a criminal prosecution against the plaintiff and John A. Glatt by a criminal information, sworn to by defendant before T. F. Hayes, Justice of the Peace, at Woodburn, Oregon, in the following form:

"Comes now Nicholas Miller who being first duly sworn, says that Charles Coghlan and John A. Glatt are guilty of the crime of assault *upon another with a dangerous weapon* committed as follows:

That said Charles Coghlan and John A. Glatt on the 17th day of June, 1919 in the County of Marion and State of Oregon, then and there being, did then and

there wrongfully and unlawfully assault and beat Nicholas Miller, *with a Winchester rifle which at that time was loaded with powder and bullets. That said Charles Coghlan and John A. Glatt being then and there armed with said Winchester rifle and being within range and shooting distance of said Nicholas Miller* contrary to the statutes, etc."

Defendant filed the foregoing criminal information after consultation with the district attorney, who after listening to defendant's statement of the case, advised defendant that no crime more serious than assault and battery had been committed. The district attorney, upon so advising defendant, who insisted upon a prosecution, prepared a form of complaint for assault and battery, and delivered it to defendant, with directions to swear to the same before the justice of the peace at Woodburn, Oregon, and to file it with that officer.

Disregarding and ignoring the advice given him by the district attorney, defendant, after receiving the form of complaint prepared by the district attorney, and before filing the same, took it to the office of his attorney, and had the latter add thereto the words which are italicized in the above copy of the charge, thereby changing the complaint from one for assault and battery to one intended to charge the crime of assault with a dangerous weapon. Thereupon defendant swore to, and filed, the complaint as amended; a warrant was issued thereon for the arrest of plaintiff and John Glatt, and they were arrested.

1. A hearing was had upon the criminal charge thus commenced by defendant, and the justice of the peace, after considering all of the evidence, made an order adjudging that there was no probable cause to believe plaintiff or John Glatt guilty of the crime

charged in the complaint, or of any crime whatever, and ordering that plaintiff and Glatt be, and they were, discharged. The action of the justice of the peace constituted a termination of the criminal prosecution for the purpose of an action for malicious prosecution; also *prima facie* evidence of a want of probable cause for commencing a prosecution for the crime of assault with a dangerous weapon: *Stamper* v. *Raymond,* 38 Or. 16, 35 (62 Pac. 20).

2. The trial court, in response to the contention of defendant, held that the criminal information filed by defendant charged assault and battery, but was insufficient to charge assault with a dangerous weapon. Whether the complaint charged the serious crime of assault with a dangerous weapon or the lesser offense of assault and battery has an important bearing upon the other questions presented by the record, and therefore should be determined before proceeding to an examination of the questions affected by that decision.

Section 1923, Or. L., provides that the crime of assault with a dangerous weapon is committed ''if any person, being armed with a dangerous weapon, shall assault another with such weapon * * .'' The important ingredients of the offense are: (1) Being armed with a dangerous weapon; (2) Assault upon another with such weapon. Both of these elements, though somewhat awkwardly set forth, appear in the complaint filed by defendant. Nothing more need be set forth in the indictment; a loaded Winchester rifle used within striking distance, either as a club or as a firearm, is a dangerous weapon as a matter of law: *State* v. *Godfrey,* 17 Or. 300 (11 Am. St. Rep. 830, 20 Pac. 625); 5 C. J. 737, 738.

Defendant intended to charge the crime of assault with a dangerous weapon. The magistrate and those

accused understood that to be the charge and acted
accordingly. Whatever may be said of the technical
sufficiency of the charge as the basis for an indict-
ment, we hold that for the purposes of this action,
plaintiff and John Glatt were charged by defendant
with the crime of assault with a dangerous weapon.

In his first assignment of error, defendant com-
plains that the court erred in overruling defendant's
motion for nonsuit. One of the grounds upon which
the motion for nonsuit was based presented the con-
tention that the evidence of plaintiff showed conclu-
sively that defendant had peaceably entered and
taken possession of the premises owned by him and
theretofore leased by defendant to Glatt Brothers,
with whom plaintiff and John A. Glatt were associ-
ated; and that plaintiff and John Glatt, while de-
fendant was in possession thereof, forcibly entered
the lands when ordered by defendant to keep out,
seized a loaded Winchester rifle that defendant had
laid down, and laid hands upon defendant with suf-
ficient force to wrest from him a double-bitted ax,
a crowbar and a hammer which were being used by
defendant to prevent the entry of plaintiff and Glatt
upon the lands; and that such facts in themselves
disclose probable cause for the criminal prosecution.

The decision of the question requires a brief review
of the evidence offered by plaintiff. The lease which
defendant had given to Glatt Brothers also granted
to the lessees the right to use a narrow lane leading
from the county road to the demised premises and
extending along the south side thereof, for the pur-
pose of going to and from the leased land; and
the lease contained a provision that if any rent
should be due and unpaid, it should be lawful for
defendant to re-enter the premises and remove all
persons therefrom without notice.

At the time of the altercation out of which this action arose, a controversy existed between defendant and Glatt Brothers as to the amount of rent due. Glatt Brothers claimed that $330 was the amount due, and therefore tendered the same to the defendant, who refused the tender, and demanded payment of $600. It was later established that $384 was the amount due defendant at the time the tender was made. It thus appeared that Glatt Brothers had made a default in the payment of the amount of rent called for by the lease, and that under the terms thereof, defendant had a right of re-entry.

3. There must be an actual taking possession of lands or tenements by entering into or setting foot thereon, to constitute an entry or re-entry: 2 Barbour's Rights of Person and Property, p. 777.

Defendant had not at the time of the altercation, or at any time, declared an intention to forfeit the lease to Glatt Brothers, and had not re-entered or declared an intention to re-enter the land for the purpose of terminating the lease. He was not upon the leased premises at the time, and had not been thereon recently.

On the day of the altercation, while Glatt Brothers were in the possession of the demised premises and were engaged in cutting and harvesting the crop, defendant, armed and equipped with the weapons and tools above mentioned, entered the lane above described, and closed the gate at the entrance thereto from the county road, and fastened the same with a piece of wire. As defendant finished closing and fastening the gate, John Glatt and plaintiff, traveling upon the county road with a team and hay wagon, drove up to the gate, intending to enter the lane and proceed to the leased premises, for the

purpose of assisting Glatt Brothers in harvesting their crop.

Upon reaching the gate, plaintiff descended from the wagon and approached the gate to open it for the purpose of allowing the team driven by John A. Glatt to pass into the lane and thence on to the leased premises. Defendant, who was standing in the lane about twenty feet from the gate, commanded and warned plaintiff not to open the gate, and declared that if he attempted to do so, he would blow his head off, at the same time raising and pointing the loaded Winchester rifle at plaintiff. Defendant repeated the warning several times, and plaintiff retired. John Glatt thereupon approached the gate, stating that he would open it. Defendant presented his rifle at Glatt, and threatened that if he attempted to open the gate, he would blow his head off, and also stated that: "There is no bluffing, I have been bluffing long enough."

Plaintiff and John Glatt then unhitched and tied the horses to a telephone pole. As plaintiff and Glatt finished unhitching their team, an automobile passed, upon the approach of which, defendant, to prevent the occupants of the automobile from observing the unusual armament with which he was provided, laid his gun upon the ground, or stood it against a small bush, and moved away about six feet, and pretended to be cutting some brush growing at the side of the lane. Plaintiff thereupon ran to the gate and threw his weight against it, forcing it open, and then made a dash for defendant's gun, and succeeded in reaching and securing it before defendant did. John Glatt followed plaintiff closely, and as defendant raised the crowbar in a threatening manner, Glatt seized defendant from behind, and pinned his arms to his side.

Glatt held defendant until he relinquished the ax and crowbar, using no more force than was necessary to disarm him.

Plaintiff and Glatt testified that plaintiff did not at any time strike, or attempt to strike, or even touch, defendant; they also testified that Glatt did not strike defendant, but merely held him until he dropped the ax and crowbar with which he was armed.

When plaintiff and John Glatt had possessed themselves of the implements mentioned, as well as the gun, plaintiff and Glatt proceeded toward their team and wagon, followed by defendant. Plaintiff and Glatt then hitched up the team, entered the lane and proceeded to the demised premises, and defendant returned to his home, about a mile distant. Two days later he commenced the criminal prosecution against plaintiff and Glatt.

4. It is clearly the rule established by all the authorities, that one out of actual possession of real property, although lawfully entitled to such possession, is liable criminally if he accomplishes an entry upon such real property by the exertion of force against the person of an actual occupant who opposes and resists such entry: Section 2533, Or. L.; *Smith* v. *Reeder,* 21 Or. 541 (28 Pac. 890, 15 L. R. A. 172); *Hickey* v. *United States,* 168 Fed. 536 (22 L. R. A. (N. S.) 728, 730, 93 C. C. A. 616); *State* v. *Bradbury,* 67 Kan. 808, 809 (74 Pac. 231, 232).

5. The defendant had not re-entered lands leased to Glatt Brothers, and was not upon the same. He was stationed in the lane, which was not part of the leased property. The right of Glatt Brothers to use the lane for ingress to, and egress from, the leased premises was an incident to the lease, and constituted a license coupled with an interest, not revocable while the lease was in force (*Power* v. *Harlow,*

57 Mich. 107 (23 N. W. 606); *Powers* v. *Harlow,* 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154), but did not clothe Glatt Brothers, or those associated with them, with any right of possession to, or property in, the land over which the lane extended; possession thereof was in the defendant, either actually or constructively, at all times: 1 Tiffany on Landlord and Tenant, § 7.

6. The action of the defendant in closing and fastening the gate and refusing to allow plaintiff and John Glatt to pass through the lane amounted to a breach of his contract with Glatt Brothers whereby they were authorized to use the same for purposes of passage. Neither Glatt Brothers nor the plaintiff were authorized to enforce the obligations of that contract, or redress a breach thereof, by the exercise of force. The situations in which a party may take the law into his own hands are not numerous, and that which confronted plaintiff and John Glatt, when they reached the gate and found it closed and fastened, and defendant interposing resistance to their progress from a position on his own premises, was not one of those situations: Cooley on Torts (3 ed.), pp. 56, 59, 663; *Turner* v. *Locy,* 37 Or. 158, 162 (61 Pac. 342); *State* v. *White,* 18 R. I. 473 (28 Atl. 968); *Taaffe* v. *Kyne,* 9 Mo. App. Rep. 15.

Defendant violated a criminal statute (§ 1925, Or. L.), when he pointed a loaded rifle successively at plaintiff and John Glatt, but there was nothing in the circumstances of those demonstrations of hostility that necessitated offensive action as a measure of defense or protection to the person, and of course there were present no property rights, to protect which, the law authorizes the employment of force.

When the plaintiff and John Glatt forcibly opened the gate that defendant had closed and fastened,

and, acting together, entered the lane, and John Glatt laid hands upon defendant in a hostile manner, their entry was wrongful, and both were guilty of assault and battery. Probable cause, therefore, existed for commencing a criminal action against them, charging them with assault and battery.

7. The conclusion that plaintiff was guilty of a technical assault and battery upon the defendant, deduced from the evidence that Glatt and plaintiff were acting together, and that the former seized and held defendant against his will, does not necessarily establish probable cause for the institution of a criminal prosecution, charging plaintiff with assault with a dangerous weapon.

In the case of *Labar* v. *Crane,* 49 Mich. 561 (14 N. W. 495), Mr. Justice COOLEY, passing upon the identical question, said:

"It is perfectly true that if the felony had been committed the misdemeanor would have been included in it; but the particular misdemeanor of which the justice found the plaintiff guilty could not have been included in a felony if no felony was committed. * * it would be monstrous to hold that because an assault might have been committed in an attempt to murder, therefore the conviction of this particular assault is evidence of probable cause to charge such an attempt. To hold this would be to justify the making of a charge of the felony in every case of assault, no matter how trivial, and might excuse the most groundless and atrocious prosecutions."

8. The question of probable cause was one for the jury, and the court did not err in overruling defendant's motion for nonsuit.

9. After directing the jury that defendant would be the aggressor under certain constructions the jury were authorized to place upon the evidence, the court gave the following instruction:

"It is conceded by plaintiff that defendant had a right of entry upon the roadway loading to the rest of the demised premises, and if defendant was merely there upon said roadway and not attempting by some overt act to interfere with Glatt's right to enter thereon, if Glatt at such time had such right, and Glatt and plaintiff under such circumstances, acting together and in pursuance to a common plan, did enter on said premises, and one or both of them seized the defendant without his consent, then the defendant had probable cause for charging the plaintiff and the said John A. Glatt with the crime of assault and battery, and your verdict should be for the defendant. But the right of the defendant to go upon the roadway in question as a means of reaching other premises would not change his status as that of an aggressor if by some overt act or acts he attempted to prevent the exercise of Glatt's right of entry, if Glatt had a right of entry, and in such attempt threatened physical violence and injury to Glatt when, if at all, he, Miller, had the means to accomplish such injury."

Defendant assigns error in the giving of the above instruction. In this instruction, the court in effect informed the jury that if the owner of land in actual possession thereof, attempts by show or threat of force to prevent his tenant or licensee from coming upon the land, such tenant or licensee may accomplish an entry thereon by the use of physical force directed against the person of the resisting owner, without becoming criminally liable.

In an earlier part of this opinion it has been shown that the law is otherwise. Though an erroneous statement of the law, it is not entirely clear that defendant was prejudiced by the instruction. However, the case as tried and presented to the jury was so widely divergent from the case as we view it, that the jury could not well have determined the controversy.

upon its merits. The important question of whether there was probable cause for the defendant to believe that plaintiff was guilty of the crime of assault with a dangerous weapon, was not submitted to, or tried by, the jury. Consequently another trial should be had.

It is not necessary further to indicate the particulars wherein the trial court entertained views of the law differing from those herein expressed, or to advert to other errors assigned by defendant, as the same questions will not likely arise upon a new trial.

The judgment of the Circuit Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

BURNETT, C. J., and BEAN and BROWN, JJ., concur.