THE CONSOLIDATED KANSAS CITY SMELTING AND REFINING COMPANY v. AUGUST PETERSON.

**No. 484.***

1. PRACTICE—*Service of Case—Meaning of "Until."* · The trial court extended the time to make and serve a case-made "until" the 20th day of February, 1895. *Held*, that the last day named in the order is to be included as part of the time allowed, and service of the case on the 20th was made in time.

2. NEGLIGENCE—*Assumption of Risk—Question for Jury.* The claim of negligence on the part of the plaintiff was that the defendant, by causing a switch to be thrown, changed the direction of the car which plaintiff was ordered to assist in pushing along the track to another track, so that it ran so close to the defendant's platform as to put him in imminent peril, with the result that he was crushed and injured, without notice to him that the peril would be the inevitable consequence thereof. He testified that he had on one occasion, and possibly two, assisted in pushing a car along the track fartherest from the platform; and it appeared from undisputed evidence that he was passing along the

*Petition for order to certify denied by supreme court March 1, 1899.—REP.

track past the switch with other employees about the time the switch was thrown. *Held*, that, as matter of law, notice of the danger could not be imputed to him therefrom, nor that he assumed the hazard of such peril, but that it was properly submitted to the jury on all the evidence, to say whether by the exercise of reasonable diligence he would have known of the peril, and so knowing it, assumed the risk.

3. ——— *Fellow-Servant — Vice-principal.* The evidence is that the defendant's foreman, who was directing the moving of the car, had authority to employ the men on the defendant's work; that he had absolute control of all of them, not only in that, but in all of the work about which they were employed, without any immediate directions or supervision of any officer of the defendant corporation; that he had full authority to and did direct them from one kind of employment to another in the defendant's service. *Held*, that the foreman was not a fellow-servant of the plaintiff, but stood in the relation of principal to him, and that this relation was not changed by the fact that, at the immediate time the plaintiff was caught between the car and platform and injured, the foreman was walking on the platform above the men, with one hand on the car assisting to push it.

Error from Wyandotte district court; HENRY L. ALDEN, judge. Opinion filed January 4, 1899. Affirmed.

*Miller & Morris*, and *Pratt, Dana & Black*, for plaintiff in error.

*J. O. Fife, W. H. Littick*, and *Hutchings & Keplinger*, for defendant in error.

The opinion of the court was delivered by

MAHAN, P. J. : The motion to dismiss the petition in error must be denied. An extension of time to make a case "until" a day certain we construe to include the day named. There are decisions holding to the contrary, but the weight of authority is in support of this conclusion, and especially in view of our code, which provides that the time within which an act is to be done shall be computed by excluding the first day and

including  the  last.   This  is a rule  prescribed  by the
code  of  civil  procedure  to render  certain  that which
otherwise  might  give  rise  to such  controversies  as we
have  under  this motion.   The  last day named  in  the
order  is always  to  be computed  as covered  thereby.

The defendant in error sued the plaintiff in error to
recover  damages  for  personal  injuries  occasioned, as
he alleged, by the negligence of the defendant in throw-
ing a switch, whereby the loaded  car which the  plain-
tiff and other employees of the defendant were moving,
under  the  supervision  of a foreman,  was  moved  upon
a different  track  from that upon  which  it  stood, and
the plaintiff was thereby put in a position of danger and
crushed between the car and platform without warning.
There  was a verdict for plaintiff and  special  findings
of  fact, on which  a judgment was  rendered.

There are nine assignments of error.   The first three
present  but one question, the sufficiency of  the plain-
tiff's evidence to sustain the verdict, under the allega-
tions of  the  petition, presented  by a  demurrer to the
evidence, and  a request  for peremptory charge to the
jury to find  for the defendant.   A careful examination
of  the  record  leads us  to the  conclusion that the evi-
dence was sufficient  to take  the case to  the jury and
to sustain the verdict.

The  first contention is  that, upon  the admission of
the  plaintiff that  he had, on one occasion  surely and
possibly two, assisted in pushing a car along the same
track, he must be charged with  a knowledge of the
danger and with voluntarily assuming the hazard.   But
this admission does not cover such conditions as would
necessarily impute  to  him  notice  that there was  an
inherent  danger  in  the  work,  nor  does  it cover  such
conditions  as  impute  notice  to him, either  that the
direction  of the car would  be changed  by throwing a

Refining Co. v. Peterson.

switch or that such change would put him in an extremely perilous position.

It is further contended, that inasmuch as it is un-contradicted that the switch was thrown in an ordinary and usual manner by some of the plaintiff's fellow servants, and that he was familiar with the surroundings, he is precluded from a recovery against the defendant, on the theory that he assumed the risk of injury therefrom or that it was the result of an act of a fellow-servant and not the principal.   Although he may have seen the switch thrown, it does not follow that he knew that thereby a new peril menaced him, and while it is true that the evidence does not show an immediate direction to any one throwing the switch, or who, in fact, did throw it, yet the directions respecting the car necessarily required the thing to be done, and the defendant was present by its foreman in charge of the work and saw it done, and the plaintiff's evidence is clearly that he was not aware of the peril thereby created, nor was there anything disclosed by the evidence which could be held as a matter of law to be notice thereof to him.   The question of the assumption of the hazard and contributory negligence were properly submitted to the jury on all the evidence.

It is further contended hereunder that there was such a variance between the allegations of the petition as to the negligence of defendant as a basis of recovery, and the evidence, as to be fatal to a recovery and to require a peremptory instruction to find for the defendant; or, in other words, that there was a failure of proof.   This contention is based on a too narrow construction of the allegations of the petition.

The allegation is not that the switch was changed in an unusual or negligent manner; it is not as to the

mere form or manner of throwing the switch; but that thereby the direction of the car was changed and it was thrown so close to the platform along which the track ran as to create imminent peril to the men push· ing the car, without notice to the plaintiff, whereby he was crushed unawares and a colaborer lost his life.

Under the fourth assignment, it is contended that the court erred in refusing to instruct the jury as follows:

"The jury are instructed that while the witness Dodge was the foreman over the men, yet you are further instructed that when he engaged in doing the work, helping to push cars, he would in the doing of that work be the fellow servant of the man with whom he was so helping to push; and if you find from the evidence that Dodge was up on the platform helping to push the brick car which hurt the plaintiff at the time of the accident, then in the doing of such work he was fellow servant of the plaintiff, and if he was guilty of any negligence, such negligence was that of a fellow servant of plaintiff, for which the defendant would not be liable."

This was not applicable to the facts of the case and would have tended to lead the minds of the jury from the real issue. There is no complaint of the means provided for moving the car, or of the manner in which it was moved or stopped. The act of negligence relied on was in arranging the switch and track, as has been stated above, so that the track necessarily carried the car against the platform without notice to the plaintiff. In this the foreman was, in the conduct and management of the work, the principal, and the mere fact that after the car was started on its mission of death the foreman put one of his hands against the car and pushed, as he moved along on the platform in a place of safety, does not make him a fellow-servant in a common employment, so as to relieve the principal

from responsibility for his failure in respect to that in which he stood in the relation of principal to the plaintiff. It follows necessarily that the instruction which the court did give on this point is not open to the criticism made on it.

It is argued in this connection that the evidence is not sufficient to support the claim that Dodge, the foreman, stood in the relation of principal to the plaintiff; that the evidence does not show that he had authority to hire or discharge any one; and that he received his orders directly from a superintendent. We are referred to testimony in the record claimed to support this contention. One of the defendant's witnesses, named Henderson, who described himself as a helper on an ore-roaster, not a foreman, on his· examination in chief had stated as follows:

"We was to set the car-load of brick back to the boiler-room, the place we took it from."

"Q. Who told you to do that? A. The orders of the superintendent, I guess, and the foreman directed us to do it."

This is the sole mention of a superintendent in the entire record of 250 pages of evidence. The record discloses that the plaintiff and other men on the work were hired by the foreman Dodge. He was on the stand, and by his evidence it appears that he had absolute control of the thirty-six men who manned and ran the ten roasters of ore; received and handled the cars of ore, and contracted for the unloading thereof; received the cars of coal used in the furnaces, the material for construction and repairs, and contracted for the unloading of them; directed the work of all these men — where they should work and at what part of the work; called them from their regular employment, any or all of them, to handle and move cars at

his pleasure—not once only, but from day to day and year after year, without the immediate direction or superintendence of any one.   He was master, and the only one known to the plaintiff or any of those called as witnesses, so far as disclosed by the record, save the incompetent and voluntary statement of the witness Henderson recited *supra*.

Whatever view the courts of other states may have taken of the true relations in law between laborers and foremen, under the facts disclosed in this record it seems clear to us that our supreme court has sanctioned the position taken by the learned judge who tried this case. (*Foundry Co. v. Secrist*, 59 Kan. 778, 54 Pac. 688 ; *Walker v. Gillett*, 59 id. 214, 52 Pac. 442 ; *K. P. Rly. Co. v. Little*, 19 id. 267 ; *Harper v. Indianapolis R. R. Co.*, 47 Mo. 567.)

Under the fifth assignment, the plaintiff in error contends that it should have had judgment on the special findings of fact.   This is based on the too narrow and technical construction put on the allegations of negligence in the petition, as hereinbefore explained, and is without merit.

Under the sixth assignment, it is urged that the court erroneously admitted evidence in rebuttal to the effect that at the time of the injury the plaintiff was but recently from Sweden and had no knowledge of the English language before coming to this country. In view of the statements made by Dodge as to warnings given to plaintiff prior to the injury, it was competent as rebuttal.

We find no just cause for the plaintiff in error to complain of the proceedings of the trial court and there are no grounds for a new trial.   The judgment is affirmed.